A case is number 17-3700, Tennessee Gas Pipeline Company LLC v. Permanent Easement For7.053acres et al. Is it Stye or? Stee, Your Honor. Stee. Okay, Mr. Stee, Ms. Whitman. Got it. Whenever you're ready. Thank you, Your Honor. May it please the Court, Your Honor, my name is John Stee and I represent the appellant in this case, King Arthur Estates, which is the owner of the subject property. First, I would like to thank the Court for granting this petition, allowing us to make this argument at this time in this case. It's a very important argument to my clients. Make sure your voice is raised just a tad. Can I try that, Your Honor? That's perfect. Thank you. I know the Court has had the opportunity to review all of the documents and the paper books that have been filed. I'd like to touch on just three things if I could here this afternoon with the Court. I think it's the primary error that the district court made was in ignoring the distinction between a taking or an action by the federal government and a taking or an action by a private entity under federal law. Okay, so if that's the distinction you want to start with, then let's have one sort of proceeding to that. And that is, tell me about Miller. Why shouldn't we think of Miller as being entirely dispositive? That is, the totality or the entirety, if you will, of what the relief could be as far as just compensation. Judge, when we look at Miller, Miller says in its opening sentence, this is a taking by the federal government for a federal use project being paid for with public funds. That is the limiting factors in the Miller case. Miller goes on to talk about how the Congress funded the acquisition. The Congress paid for the acquisition using public funds. But isn't it at its base all coming from the Fifth Amendment, regardless of whether it's the United States as the plaintiff or whether it's a National Gas Act case? Judge, every taking, I think, comes from the Fifth Amendment. Now, I don't purport to be a constitutional scholar by any stretch of the imagination. And frankly, that sort of thing is well above my grade, as you used to say in the Army. But when I think about that question, it leads me to believe that if that was, in fact, true, then there would be no basis for any damages other than any condemnation case other than that which is being allowed for in Miller. And we have already seen thousands upon thousands upon thousands of cases in which damages other than those as as enunciated Miller have been awarded. Let's think about this, then. You say Miller's inapplicable, as I understand you, and that we should look at Kimball Foods. But my question to you is, is there a way to think of both cases being applicable? So, for instance, should we or could we think of Miller as providing a baseline? Alluding to your statement that, you know, we have thousands of takings cases. Right. We were all familiar with the Fifth Amendment and Miller is definitive on what just compensation is in that context. Right. So you want us to look at Kimball Foods. We think of Miller as, say, a baseline. And depending on the state and the state takings regime, there can't be less than Miller. But there can be more than Miller. And in this case, Pennsylvania applies. I'm sorry. Pennsylvania provides more than Miller. So if we meld or marry Miller and Kimball, does that work both constitutionally and doctrinally? Or in your view, do we just ignore Miller and go straight to Kimball Foods? Your Honor, I think that my father wanted me to be a doctor. I am. I did, too. I think that to try to blend Miller with Kimball Foods does disservice to the two Kimball Foods and to all of Kimball Foods progeny. I think that if we look at Miller and simply look at what Miller says by its very terms, it stands for. I think that when we look at Kimball Foods and Kimball Foods tells us based on clear field trust that we have to look at other things. Now, what struck me about that when I was looking at the Kimball Foods about the controversies affecting operations of federal programs, not inevitably requiring resorts to uniform federal rules. And Kimball sites Clearfield Trust for that Clearfield Trust was decided by the same court as decided Miller. Clearfield Trust was decided less than two months later by that same court. And that court understood the distinction between what it was enunciated in Miller and what it was enunciated in Clearfield Trust. As Clearfield Trust explained to us by Kimball. So I think that there is a distinction. I think that the Supreme Court back in nineteen forty three when it decided those knew there was a distinction. I think that the Supreme Court has said to us in interpreting Clearfield Trust through Kimball and through the camper cases that we have to look at those other circumstances when we're applying and deciding whether to apply a state law to a federal question. So if you take if you look at the three factors in Kimball Foods, the need for a nationally uniform law, you would say. I would say there's absolutely no need for a national uniform law. We have existed for 80 years since the since the natural gas act was enacted. There's been no need for for uniformity. And more importantly, when Congress passed that act, it said we could apply. It could be done in either state court or federal court. If we make the application in federal court, we apply the practice and procedure of the state court. Congress recognized the need for no uniformity by saying we have in those days, 48 states. There are 48 different sets of laws which can be applied to the manner in which this is going to be. Could there at some point be such a gap between federal and state law on measures of just compensation that would be so significant that federal law would have to apply to keep state law from frustrating federal objectives? I imagine that could occur, Your Honor. But so far, I have not seen any case in no case which has interpreted the statute has said that to date. I think of the bison case just decided several years ago in the Ninth Circuit, where they said that they had absolutely no problem with the application of Wyoming law. And that the speculative was speculative as to whether or not there would be any overall effect, whether it be positive or negative. As you as you think about the 48 states in the. At the time, what? Is there a circumstance in which a state takings regime could provide or define just compensation as less than fair market value? Because if not, if I'm going back to Miller, if not, then I then I don't understand the distinction that you're drawing and not thinking about Miller at all. I think the response to your question is no. No state could say that just compensation would be less than fair market value. Because otherwise you'd be depriving somebody their property without just compensation. You're taking property, you're exchanging it for cash, you're converting one item to another. So your point is that's a that's that's a basic constitutional principle and you don't need to look to Miller for that. We don't need to look to move for that as far as I can see. All right. So let me ask you this question about commercial relationships. The third factor, because I'm trying to figure out exactly that is, is that in your view, a supposed to be an examination of the condemn or condemn me relationship? Or is it supposed to look at what the set of expectations of the condemn me is as they are dealing with the fact that their property is going to be condemned? I think it looks to the the integrated issue of the business, the entire business relationship between a condom nor a condom me with a condom nor is a private entity. And the condom me is obviously a private entity. Here we have an easement being taken. That easement is a matter of property law. It's construed in every state under the laws of the state. There is no federal property law about easements. Well, if you look at the business relationship, we're looking at the business relationship. The parties have established by virtue of the applicable law into which they are conducting their business relations. You seem to really be hanging your hat pretty heavily on. This is a private party. This is a very private thing. But I mean, this condemnation of property is pursuant to certificate of public service convenience. I mean, isn't that a public use? I mean, isn't it? It's you know, I get I understand it's not the United States, but is it really wholly private? It is a private taking. Under a federal statute affected for a public interest, but it is not a public use. The government has an interest in making sure gas gets transmitted across state lines from point A to point B. Right. But if the government truly wanted to be involved, the government would be doing the transmission by creating the pipelines. The government hasn't done that. This is a private entity which has come into Pennsylvania for its private business purposes. And its private business purposes is to transmit gas for its profit oriented purposes. And there's nothing wrong with profit. Profit is not a four letter word. Your federal judge, it kind of is, but I could make you laugh. That'll get you into papers. But when we when we look at the overall question about private versus public, that's a major, major, major distinction. We are not talking about the government doing something for its purposes or for the public wheel. We're talking about a private entity doing something for its business oriented purposes, which has an effect on the public. I get that distinction. But the question is, you know, in the Fox hollow decision. Yes, sir. Judge Kibbutz says, I don't understand why there's that distinction. Now, you've explained what the distinction is, but you haven't explained why the distinction. So help us when we I think it was best said in the Georgia power case. In the Georgia power case, that court said the distinction emanates from the. And I want to make sure I say this right, because I just don't have the case right now. So go ahead. Sorry. The distinction emanates from the sovereignty of the country. The sovereign has certain inherent powers and rights. A private entity doesn't have that inherent power or right. It only has that which is delegated to it in this case by the government, through the Federal Power Act, by virtue of the statute. And I think that's the major distinction. That's a reason when you have a a private condemned or to automatically go to state law. I believe so, Your Honor. You you you pointed out in your brief that there's already a developed federal common law as pertains to at least the United States plaintiff condemnation actions. Right. If we disagree with you, wouldn't that just become the same? Wouldn't the same body of federal common law apply? I don't know that to be true. We don't have any circuit. We don't have any district court which has said what the federal law would be in that circumstance. We do have the body of law with the federal government takes for public for public purpose and pays for public money. We do not have any body of law which says what should be the compensation to be paid under federal law under the circumstance we're talking about. We have always applied state law. All of us are not. I mean, maybe maybe maybe circuits, but not every single court. I mean, what one has not. OK, one has not. That being the foxhole case, which was brought up on appeal here, but the matter was resolved. The question. Thank you. So may it please the court. I would answer your first. But give your name for the. I'm sorry. My name is Elizabeth Whitmer with Saul Ewing. I'm representing Tennessee Gas. Has this court ever expanded Miller to condemnations beyond those brought by the United States? No, this court. No, it has not. Although the district courts, I disagree with Mr. Stee. In fact, there are a number of condemnations under the Natural Gas Act in Pennsylvania that have had their compensation decisions decided under the principles in Miller and its progeny. But in your brief, all those cases are federal contempt, federal condemned or cases that the cases that you cite for the proposition that that Miller is dispositive here. Yes, the. The. Well, actually, I don't think that's true. In my brief, we cite a whole list of the 75 years of cases that have been decided under Miller for the proposition that Miller resolved the question of federal condemnation. On page 16 of your brief, you say following certain parcels of land, both this court and district courts within the circuit have uniformly applied federal law in every case in bold involving the determination of compensation and condemnation pursuant to the federal power of them in the domain. And you cite cases in which the United States is the condemned nor in each instance. That's right. We do not cite because there there are no cases which directly follow Miller. There are a number of cases, for example, the 11th Circuit case in Southern, which is cited, I believe, on page 18 of our brief that go on to apply the federal condemnation principles. But they don't discuss it. They simply do it. So when you when you read the case, you see that they're applying the federal principles, but there is no discussion of state versus federal law. So so, you know, there are two ways to look at Miller. Right. Right. You know, narrowly, as your adversary would say, and I guess rather broadly, as you would say, in the sense that you think Miller here is dispositive. Yes, I yes, I think it is dispositive. But I also think we can meet the Kimball test as well. So isn't the federal interest? What is the federal interest in a nationally uniform body of law? Well, the United States is not a party. Property rights are traditionally an area of state law, and the National Gas Act allows licensees to bring condemnation proceedings in state court. I'm missing something. OK, so your honor, first of all, the the definition of property in a state is the province of the state. So states decide whether water rights are property or not. Things like that. But the determination of compensation do under the guarantee. Remember, the Fifth Amendment is a guarantee. No property shall be taken for public use. But without payment is not to this. That begs the question as to whether attorney's fees and appraisal fees under state law are so much of a burden as to frustrate a federal objective. I don't I don't get it. With this case, isn't only about attorney's fees and appraisal fees in Pennsylvania and the in the underlying case here, for example, Mr. Stee is arguing that he would get certain damages he believes under Pennsylvania law that he wouldn't get clearly under federal law. And remember, starting with Miller, the Supreme Court found that there were certain things which would either be admissible or recoverable under different state schemes, which are not part of just compensation under the Fifth Amendment. They're not guaranteed. But if you look at the Amtrak case that we cite, and I don't I don't believe that Mr. Stee addresses that as National Railroad versus two parcels is the Second Circuit case. So it's a case where Connecticut was doing. I mean, that was pretty blatant. Right. Well, Connecticut was attempting to do. But it was part of their eminent domain code. And so in Pennsylvania, Pennsylvania has a takings clause in its constitution. Pennsylvania has an eminent domain code. Pennsylvania has a body of common law that lay a railroad track all all down the East Coast, which is, you know, the primary corridor. I mean, plus, there was real concerns about what was going on in Connecticut. It seems that Amtrak is significantly different than the types of federal objectives that you would have here. I would say they're exactly the same. What my client is putting in are the railroads for natural gas. Natural gas is not transported on railroad. Natural gas is not transported by truck on the highway. Natural gas. What was at issue here? The railroad for natural gas or was it attorneys fees and appraisal fees? In this case. Well, in this case, it's the principle. We don't believe that King Arthur will be able to recover the additional damages. It's arguing it believes it should recover even under state law. But regardless, that analysis shouldn't happen. As Miller said, we don't we don't need to look at local law. If we interpret Miller as restrictively as you suggest, that would mean that state takings regimes would be superfluous. No, Your Honor. Remember that there's. So when would they be invoked? Give me an example. When it's a state taking. So. So when you're taking under a state constitutional ability. So any time, whether a federal condemned or or a private condemned or federal law is invoked, the totality of the damages are purely just compensation, which is defined under Miller as fair market value. That's it. Full stop. That's how that's a pretty short opinion you want us to write. Is that is that it? I think you could choose to write that when. Well, when when it's no, I don't think it's wrong when it's that we're suggesting that we ought to be right. Yes, I believe you should write that decision in this case under the Natural Gas Act. OK, I do. I am. If you want us to write that opinion, then I presume because it's the Third Circuit, that will then be taken as precedent in every court in the nation. Other circuits choose to follow that the totality of of recovery in a takings case, whether it's initiated in federal court or in state court, will be fair market value. And if I'm misunderstanding you, tell me. Well, fair market value, as defined by the very robust body of law that has developed under the Fifth Amendment with 75 years of federal cases, that is the rule for every taking that is initiated by the United States. No one has questioned that when the United States. No, but what you have is Congress deciding to have someone stand in the shoes of the United States to develop this particular transmission system, very similar to the railroads and Amtrak. So the rule for Amtrak. But you'd be saying to every state, you may not construct a takings regime, which will provide a greater benefit than fair market value under any circumstances. That would be right. No, that is not logical. No, that is not what you would be saying. OK, you would be saying when the taking is occurring, it would be limited only to the Natural Gas Act. So when the taking is occurring under the Natural Gas Act, in which Congress has evidenced a desire to have a network of pipelines, which run all the way from Maine to Florida, all the way to Texas and all the way to Washington state. They crisscross the country. You look at a map, it covers the entire country. Everyone who is subject to a taking under the Natural Gas Act across the country will know what the rules are. And in fact, have known what the rules are. The appraisals are conducted under the yellow book, the uniform standards for federal land acquisition, as they were in this case. And that you want something that's national, isn't federal rule civil procedure 71.1 enough? Federal rule of civil procedure 71.1 only applies to the procedure, not to the substantive law. And then we get back to Miller. So Miller said, we need not determine what is local law. For the federal statutes upon which reliance is placed, require only that in condemnation proceedings, a federal court shall adopt the form and method of procedure afforded by the law of the state. So in Miller, there was a practice and procedure clause. They do not and could not affect questions of substantive right, such as the measure of compensation grounded upon the Constitution of the United States. The practice and procedure clause, which if you look at US v. 93.97 acres, also cited in our brief, was a common method for Congress to provide for a procedure when there wasn't a federal rule of civil procedure. In fact, if you look at that case, it cites cases back to 1917, Supreme Court cases, confirming that that's a procedural statement. That you can go to federal or state court, and you have to follow the procedure of the state. That was all superseded by rule 71A, now rule 71.1. So the problem with cases like Columbia Gas, which is really what started this mischief about, oh, we shouldn't apply federal law. Columbia Gas started with the proposition that, hey, maybe there is substantive law included in that practice and procedure statement. They did not cite to, look at, or analyze the fact that, in fact, there's a history, more than 100 year history, of those kinds of practice and procedure provisions being only procedural and not substantive. And that law is settled, right? And that law is very settled, yes. So what Columbia Gas, the actual holding in Columbia Gas, if you look at it, is clearly wrong. Because the holding in Columbia Gas is that 717FH, which contains the practice and procedure clause, incorporates the law of the state in which the property is located. That is wrong. That's directly contrary to Miller and to the line of Supreme Court cases, which hold that practice and procedure clauses are merely procedural. And those cases are collected at U.S. v. 93.97. Let me ask you this question. How would the application of Pennsylvania law in this instance frustrate the objectives of the NGA? Because it's the fact that what we are building here is a nationwide network. There were landowners in Pennsylvania and New Jersey who were affected by this project. This project had 205 landowners, 379 affected tracts, 14 condemnations in Pennsylvania, 5 in New Jersey. What you're asking me to consider is, should there be a different rule? Should people in New Jersey be able to recover more? that different states render different benefits to their citizens based on their law? We do that all the time. But not in the federal context. You have never done that in the context of a federal taking. Because all of those cases I cited to you, everyone, whether they were in Pennsylvania or New Jersey, everyone in the Third Circuit is having the same measure of just compensation applied to them. You're trying to make the Natural Gas Act an exception to that based solely on, I'm gathering, this idea that we are a private entity, we are a holder of a certificate instead of the United States itself. So how are the objectives of the NGA frustrated? I don't understand. Because there would not be... What is the objective of the NGA? The objective of the NGA is to build a national network of natural gas transmission lines so that the United States doesn't have to build it. Holders of certificates build it. These projects can encompass two states, as this one did. But they can encompass states, 10, 12 states. Your court just a couple weeks ago issued a decision in the Atlantic Sunrise Project. That involved landowners and properties from Pennsylvania to Georgia. And as in the Amtrak case, the Second Circuit case, if any one of those states has a scheme which would frustrate the purposes of building these networks, which are approved by FERC, then it would stop the entire project. And tell me how it would frustrate it. I understand that in your hypothetical, or your explanation, there's a different takings regime, if you will, in each state. But how does that frustrate the objective? I mean, is your argument that because there could be different costs for taking in Pennsylvania versus Georgia versus North Carolina, that's going to stop the project? Cost alone, not necessarily. But I think the best example to look at is that Amtrak case. So every state has its own constitution. And every state has a takings clause in that constitution. And then every state develops. That case is so different. He had local zoning laws requiring the condemnor to apply for a variance prior to a taking. And it was going to be extremely inefficient. Right. And it was seriously, and the court said it will, quote, rail passenger service program. Right. And the same, if we were trying, we also do partial takings, just like Amtrak. So under that law in Connecticut, if our partial taking, which is an easement through a property, caused a remainder parcel which didn't comply, then under the constitutional takings law, it wasn't the zoning law. It was, in Connecticut, if your taking will require in a holdover parcel, you have to go apply for the variance and get the zoning first. That was part of their takings jurisprudence, not just their zoning law. That would apply to us. That's not procedure? Well, according to Amtrak and the Second Circuit, that was enough to frustrate that scheme. It kind of sounds like, with all due respect, that we're only talking about money here, and it's a little less money in your client's pocket. It's not only about money. Give me an example when it's not money. Well, it's also about fairness and just compensation. Is the disabled criteria case. You're saying Pennsylvania law does not take into account just compensation? I'm not saying that. Pennsylvania law has a different measure of just compensation than federal law. You can argue, then, in some cases it provides more. How is this about fairness? Because if you have a project with properties in Pennsylvania and properties in Florida, and the Sable Trail case is in your book as well. It was cited by both sides. Then, in Florida, the landowners are going to get their attorney's fees. In Pennsylvania, they will not. If the U.S. was doing the taking, nobody would get attorney's fees. Attorney's fees are not allowable. So back to Judge Shigaris' question, isn't this only about money? It's not only about money because there are numerous other things that can have been developed and are illustrated in the Amtrak case. In each state's development of its own takings law. Some of them have precedent requirements for things you have to do before you can condemn, for example. If this action were brought in state court, you'd have the same reliance on federal takings, jurisprudence. But obviously, you're in state court. I presume that your argument would be the exact same. That is, you rely totally on Miller and disregard the state takings regime. That's correct. If we did choose to proceed in state court, which we can still do even under 71.1, the substantive law that would apply is the law rooted in the Constitution. The guarantee of just compensation under the Fifth Amendment, not under Pennsylvania's taking clause. The opinion that we have to write in order to come out your way is Miller not only is dispositive, but Miller should be interpreted more broadly than it's written. And the extension of Miller should be all condemners, private or federal government, should only have to pay just compensation as defined in Miller as fair market value. No, Your Honor, I respectfully disagree. That's not the opinion. No, I read you Miller. They do not and could not affect questions of substantive rights, such as the measure of compensation grounded upon the Constitution of the United States. What Miller says is, regardless of whether the condemny is standing in the shoes of the federal government or is the federal government, Miller already says that the rule is the federal common law under the Fifth Amendment to the United States for federal takings. Thank you very much. Go ahead. You had mentioned that I think in response to Judge Greenaway's question, he had pointed out that this case deals with professional fees and development costs. You said they're seeking more than that. I'm interested in what? I was under the same impression. So if you look at the underlying briefs in this case, there's a provision under Pennsylvania eminent domain code that if you interfere with an access, then you get additional damages, essentially, for that interference. We claim we do not interfere with an access. The only access to this parcel actually already has a preexisting pipeline running through it. But our opponents claim that they purchased other properties, which they were going to use for access, which will now be interfered with, and they should get a million dollars. So it's a provision of the Pennsylvania eminent domain code, which is unique to Pennsylvania, which developed under Pennsylvania jurisprudence, which doesn't have anything to do with federal takings. I take it you do this kind of law. I hated when judges said this to me when I was in your spot, but I noticed in your brief, there was nothing about, like, really crazy state laws that might persuade us, geez, we can't have natural gas companies having to deal with that. Is there any state laws out there that are just over the top, in your opinion, that might compel us to say, hey, this is really not fair to subject a gas company to this? The problem I ran into is not the lack of laws, but the lack of cases. So just to show you, again, in this case, 205 landowners, 14 condemnations. We settle 99.9% of our cases, right? Very few of these cases especially get to circuit court, but even to district court, because, at least in Pennsylvania, attorneys' fees wouldn't be recoverable anyway. I'm not necessarily asking you about decisions. I'm asking you, are there any things that you're aware of out there that states have that's just really sort of beyond the pale, in your opinion? Well, I do think I encourage you to go back and reread the Amtrak case, because that was not basically – But his question is, in this area with the National Gas Act, are there any states that, with respect to condemnation, are so far out there that you go, oh, my goodness, we just can't have this? I think Sable Trail and the interpretation of Florida Lying, that case comes close to being outrageous. Again, I'm not asking you for a case name. No, I understand. No, I think it is things like the specific provision of the eminent domain code that Fox Hollow has invoked here, which is really meant to address PennDOT, and when they close off your driveway, what do you do? That every state has little quirks like that in its eminent domain code. And the only one I can point you to that's easy to read about is this Connecticut one in the Amtrak case. Let's assume for a moment that Kimball Foods applies. I know that's not what you want to assume, but it's my hypothetical. In that context, we recognize a presumption in favor of state law. So what is particularly special or unique about this case that that presumption is overcome? So for one thing, Kimball Foods should only apply when it's a question of whether you need to develop a federal common law. There already is a federal common law. We all agree on that. So that's the first thing about Kimball and why it wouldn't apply here, because you're not looking at either apply state law or develop something new. It already exists. Am I thinking about the federal common law too narrowly? The federal common law is with regard to the federal government as a condemn nor. Yes? Yes. OK. But it is with regard to the federal government as a condemn nor. It's also, though, the common law under the Fifth Amendment. It is the definition of what someone who is condemned under the Fifth Amendment takings clause, as opposed to a state takings clause, is entitled to receive as just compensation. We have more than 100 years of jurisprudence on that. And that is what should apply here, because this is a federal action. But to go back to Kimball and the three points in Kimball, the number one would be need for a nationally uniform body of law. There already is a nationally uniform body of law. It's the takings law under the United States takings cases. Number two is whether application of state law would frustrate specific objectives of the federal program. But if there isn't anything out there that's so egregious, there might not be a need for a nationally uniform law. We believe that, in fact, Amtrak has already held that Connecticut scheme was so egregious that you needed uniform law. And it seemed to be that you have to go get a variance, which could take forever, with regard to laying down track in New London, Connecticut, in connection with the bed for the Northeast Corridor. I get it. That's not what we're talking about here. It is. Respectfully, Your Honor, it is. You'll see that almost all this development is going south, not north, because of the provisions in states like Connecticut and New York that have tried to apply these state precedents to stop federal programs that they don't like. This is not stopping a federal program. This is an ancillary matter pertaining to a condemnation under the National Gas Act. And you said that you don't know of any state that is so egregious, that's really out there, just that's wacko, with maybe one possible exception. And so if Connecticut was, to use my term, wacko, and there's maybe no state here that's wacko, then why is there a need for a nationally uniform law? Because the other reason, again, would be fairness. As with railroads and everything else, we're taking easements across states. Well, the people here, they're talking about fairness on the other side. And to some extent, I'm talking about the structural concern of federal-state relations. Don't mess around with state matters, except to the extent you really have to. I mean, that's a battle that's being fought for two and some centuries. But the point is, this is a matter, condemnations are normally matters of state law. And when you look at the Kimball test, I can't see how it is that we don't confine Miller to exactly what Miller said. When it's a condemnation by the United States, federal law. But going further, under Kimball, when it's not a condemnation by the United States, let state law apply, especially to ancillary matters like we have here. You and I read Miller differently. Because Miller never says anywhere that it knows that the condemnor is the United States. The touchstone in Miller, though, is that the condemnation is federal and under the Fifth Amendment. There is no state that has a common law of compensation under the Fifth Amendment. States have compensation law developed under their own state constitutions and then their separate eminent domain codes. Federal takings, though, are not under Pennsylvania's constitution and Delaware's constitution and New Jersey's constitution. And that's why we are subject to the rules for just compensation under the Fifth Amendment. All right. Thank you for the questions. Thank you very much, Trustee. I think I think what we need to remember about this whole thing is something that Tennessee has set forth in its brief. That was why was the Natural Gas Act passed in the first place? It was passed because states were not allowing the exercise of state law, condemnation law for the installation of interstate gas transmission lines, as a result of which they passed the act, allowing the interstate, these companies, the power of eminent domain, FERC authorized it. It was to eliminate a state restriction on the exercise of its powers. That restriction was eliminated. But Congress said, OK, you can use a federal statute to condemn properties, but apply the state, the law of the state, whether it's taken in state court or whether it's taken in federal court. Congress was looking at resolving a problem with state condemnation laws. That's what that's what it's looking for. And then the Supreme Court goes on to tell us that the real reason that this act was passed was to prevent the. What was the word that they used in that case to prevent the. Abuse of people by the natural gas companies. Those are the two things. Those are the two predicates which we have to step back and look at in the adoption of this act. And I think if we think about it from that perception, we're answering the questions which you have been asking your honor. Thank you. Thank you very much. Thank you to both counsel. And we'll take the matter under advisement.